**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDY ALEXANDRE, | : | |
| Petitioner | : | No. 1:24-cv-02123 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| WARDEN J. GREENE, | : | |
| Respondent | : | |

**MEMORANDUM**

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. §

2241 filed by pro se Petitioner Eddy Alexandre ("Alexandre"), a convicted and sentenced federal

incarcerated person,[1] in which Alexandre generally contends that the Federal Bureau of Prisons

("BOP") unlawfully increased his monthly payment towards his outstanding restitution under its

Inmate Financial Responsibility Program ("IFRP"). For the reasons stated below, the Court will

dismiss the petition.

I.    **BACKGROUND**

A.    **Alexandre's Underlying Criminal Proceedings[2]**

On July 18, 2023, Alexandre was sentenced to one hundred and eight (108) months'

incarceration, followed by three (3) years' supervised release, after pleading guilty to one (1)

count of commodities fraud (7 U.S.C. §§ 9(1), 13(a)(5), and 17 C.F.R. § 180.1) in the United

---

[1] Alexandre is currently incarcerated at Federal Correctional Institution Allenwood Low. He has a projected release date of April 9, 2031, via good conduct time release procedures. See (Doc. Nos. 9-8 ¶ 3; 9-9 at 1).

[2] The Court takes judicial notice of the docket and filings in Alexandre's underlying criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

States District Court for the Southern District of New York ("SDNY").  See (Doc. No. 1 at 1);

United States v. Alexandre, No. 22-cr-00326 (S.D.N.Y. filed May 11, 2022) ("Alexandre"), ECF

No. 106 at 1–3.  At sentencing, the SDNY described Alexandre's criminal conduct as follows:

> Alexandre founded EminiFX in September 2021.  In the roughly eight months that followed until his arrest in May 2022, he defrauded tens of thousands of investors, predominantly members of [the] Haitian community and members of his church, who invested over $248 million with EminiFX.  He promised massive returns assuring investors returns of at least 5 percent each week and possibly up to 9.99 percent. . . .
>
> The primary way that . . . Alexandre was able to convince investors to put their hard-earned money into EminiFX was by telling them that he had this amazing secret technology called robo-advisor assisted account.  EminiFX advertised its sophisticated trading functions on its website.  Each investor supposedly would receive a fully-serviced robo-advisor assisted account and AI software.  That technology, according to . . . Alexandre, would allow for investors to earn passive income through automated investments in cryptocurrency and foreign exchange trading.  That is how those outsized returns supposedly would be generated, but in reality, . . . Alexandre never had that robo-advisor assisted account up and running.  This special secret technology did not exist.
>
> In addition, . . . Alexandre reported false return [sic] on investment figures to investors.  He would report to investors that he had secured the promised returns but did not disclose to investors that they in fact were suffering substantial trading losses.  All of this was to bring more investments into his company and keep investors with his company.  The fraud extended over several months and it entailed . . . Alexandre employing sophisticated methods, it entailed him working to enlist more and more investors.  It entailed weekly investor calls, it entailed creating incentives for investors to bring in more people.  Existing investors received commissions from recruiting others to join in EminiFX.  This was not a one-time transgression, it cannot be regarded as an isolated or rash decision.  This was a calculated, planned, and ongoing fraud.  And the reach of the fraud was vast, it was approximately 25,000 victims.  Thousands of lives were damaged.  Many of those victims cannot afford to lose their money they invested.  A lot of the investors, it is clear, invested much of their life savings.

See Alexandre, ECF No. 107 at 95–97.

Along with imprisonment and supervised release, the SDNY ordered Alexandre to forfeit

$248,829,276.23 in currency and certain property, pay a $100 special assessment, and pay

$213,639,133.53 in restitution.  See Alexandre, ECF No. 106 at 6–8.  Regarding restitution, the

2

SDNY's written judgment does not state whether Alexandre had to pay it immediately or through installments.  See id. at 7.  Instead, it references only payment of the $100 special assessment and otherwise states that "[u]nless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the [BOP IFRP], are made to the clerk of the court."  See id.  Nevertheless, during the sentencing hearing, the SDNY articulated the following relating to the restitution order:

> Restitution is mandatory in this case.  In addition, in your plea agreement you agreed to make restitution in an amount to be specified by me and that it will be a condition of your supervised release.

> As discussed earlier, I will order restitution in the amount of $213,[639,133.53][3] today, with the understanding that the parties may come back within 90 days, which I believe would be October 16th, 2023, with the proposed restitution order and table of victims.  At that point they also should advise whether the restitution figure I have just said should be adjusted.

> . . .

> The Clerk of the Court will forward any restitution payments made by . . . Alexandre to the victims.  Pursuant to [18 U.S.C. § 3664(f)(2)] in consideration of your financial resources and other assets, including whether any of those assets are jointly owned, the projected earnings and other income, and any financial obligations you have including obligations to dependents, you shall pay restitution in the manner and according to the following schedule:

> In the interest of justice, restitution shall be payable in installments pursuant to 18 U.S.C. [§] 3572(d)(1) and (2).  While serving your term of imprisonment, you shall make installment payments towards your restitution obligation[,] and you may do so to the [BOP's IFRP].

> Pursuant to [BOP] policy, the [BOP] may establish a payment plan by evaluating your six-month deposit history and subtracting any amount determined by the [BOP] to be used to maintain contact with family and friends.  The remaining balance may be used to determine your payment schedule.  [BOP] staff shall help you develop a financial plan and monitor your progress in meeting your restitution

---

[3] The Court has modified the transcript to reflect the amount of restitution identified in the SDNY's judgment.

obligation.  Upon your release from prison, any unpaid restitution will be paid in
monthly installments of at least 15 percent of your gross income but not less than
$300 per month and payable on the 7th of the month.

I have considered the factors in Section 3664(f)(2) in formulating that payment
schedule. You shall notify, within 30 days, the Clerk of the Court, U.S. Probation
Office during supervised release, and U.S. Attorney's office at 86 Chambers Street,
New York, New York, of any change of your name, residence, or mailing address,
and any material change in your financial resources that affect your ability to pay
restitution.  If you disclose or the government otherwise learns of additional assets
not known to the government at the time of my restitution order, the government
may seek an order modifying the payment schedule consistent with discovery or
additional assets.  Your liability to pay restitution shall terminate on the day no later
than 20 years from the entry of judgment or 20 years from your release from prison.
Subject to those limitations, in the event of your death, your estate will be
responsible for any unpaid bail and the restitution amount[,] and any lien filed
pursuant to Section 3613(c) shall continue until the estate receives a written release
of that liability.

You also shall pay interest on any restitution amount of more than [$]2,500 unless
restitution is paid in full before the 15th day after this judgment.

See Alexandre, ECF No. 107 at 110–13.

Alexandre did not file a direct appeal from his sentence; however, he filed a motion for

retroactive application of Amendment 821 to the United States Sentencing Guidelines ("USSG")

pursuant to 18 U.S.C. § 3582(c)(2) on April 4, 2024, which the SDNY denied later that day.  See

Alexandre, ECF Nos. 117, 118.[4]  On May 6, 2024, Alexandre filed an "Emergency Motion to Set

Fixed Restitution Payment Amount by the Sentencing Court," which is still pending in the

SDNY.  See Alexandre, ECF No. 119.  In this motion, Alexandre asserts that the BOP informed

him in April 2024 that, absent a court order fixing his restitution payment, it would increase his

---

[4]  18 U.S.C. § 3582(c)(2) permits a court to reduce a term of imprisonment where the defendant's
original sentence was "based on a sentencing range that has subsequently been lowered by the
Sentencing Commission," and if "such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission."  See id.  Amendment 821 to the USSG, which
became effective on November 1, 2023, amended USSG § 4A1.1(e) and created USSG § 4C1.1,
which benefits qualifying defendants, either through a lower criminal history score, see U.S.S.G.
§ 4A1.1(e), or through a lower offense level, see U.S.S.G. § 4C1.1.

monthly restitution payment under the IFRP from $25 per month to $880 per month.  Id. at 1.  To avoid this result, Alexandre requests that the SDNY issue an order establishing "a new fixed and reasonable amount [that he] can pay during incarceration" or, in the alternative, "defer or set the restitution amount for after [his] release from incarceration."  See id.

Alexandre also filed an amended motion to set vacate, set aside, or correct sentence under 28 U.S.C. § 2255, which remains pending.  See Alexandre, ECF No. 131.  As part of this amended motion, Alexandre appears to argue that his trial counsel was ineffective for failing to appeal from the SDNY's restitution order insofar as it allegedly left "the specific amount of restitution unsettled."  See id. at 44.

**B.    Alexandre's Section 2241 Habeas Proceedings**

Alexandre commenced the instant action by filing his Section 2241 habeas petition on December 4, 2024.  (Doc. No. 1.)[5]  Alexandre raises claims relating to the BOP's administration of the IFRP in establishing the amount of his monthly restitution payment as well as a determination that he had refused to participate in the IFRP when he did not remit monthly payments as required by the IFRP.  (Id. at 6–7.)  For relief, he seeks an order directing the BOP to "reverse the arbitrary decisions [sic] establishing a new partial payment amount, restore [his

---

[5]  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Here, Alexandre included a declaration with his petition in which he states that he placed his petition in the prison mail system on December 4, 2024.  (Id. at 8.)  As such, the Court considers December 4, 2024, as the petition's filing date even though the Clerk of Court did not docket it until December 10, 2024.

Additionally, Alexandre neither remitted the filing fee nor filed an application for leave to proceed in forma pauperis when he filed his habeas petition, resulting in the issuance of an Administrative Order requiring him to remit the fee or file an in forma pauperis application. (Doc. No. 3.)  Three (3) days later, Alexandre paid the filing fee.  See (Unnumbered Docket Entry Between Doc. Nos. 3 and 4).

f]ederal credits time [sic] and [First Step Act] [sic] as in the status quo ante and restore any amount taken as part of that decision."  See (id. at 7).

This Court issued an Order on January 13, 2025, which, inter alia, required Respondent to file an answer to Alexandre's petition within twenty (20) days of the date of the Order.  (Doc. No. 5.)  After receiving an extension of time to file an answer (Doc. Nos. 7, 8), Respondent timely filed an answer on February 24, 2025 (Doc. No. 9).  Alexandre then timely filed a reply brief in further support of his habeas petition on March 11, 2025.  (Doc. No. 10.)  On November 25, 2025, Alexandre filed a motion for summary judgment and a brief in support of his motion. (Doc. Nos. 12, 13.)

### C.    The IFRP

The BOP established the IFRP to assist incarcerated individuals with satisfying their court-ordered financial obligations.  See 28 U.S.C. § 545.10; BOP Program Statement 5380.08, Inmate Financial Responsibility Program (Aug. 15, 2005) ("PS 5380.08") at 1.[6]  Through the IFRP, the BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations," see 28 C.F.R. § 545.10, which include, inter alia, special assessments, court-ordered restitution, as well as fines and court costs.  See id. § 545.11(a)(1)–(3).  The BOP assists an inmate with financial obligations by having its unit staff "help th[e] inmate develop a financial plan" and "monitor the inmate's progress in meeting that obligation."  See id. § 545.11.

The process of developing a financial plan for the inmate begins at their initial classification, during which "the unit team shall review [the] inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the

---

[6]  Respondent attaches a copy of BOP Program Statement 5380.08 as an exhibit to its response in opposition to Alexandre's habeas petition.  See (Doc. No. 9-4).

Judgment and Commitment Order(s)." See id. § 545.11(a). The unit staff will then develop a "documented" financial plan for the inmate. See id. In creating this plan, BOP staff reviews deposits to the inmate's trust account during the prior six (6) months, deducts IFRP payments made for UNICOR[7] or non-UNICOR work assignments, then deducts $75 per month ($450 for six (6) months) from the inmate's account to allow them to have telephone communication through the Inmate Telephone System ("ITS"). See id. § 545.11(b). The BOP may require payment from any remaining balance toward restitution. See id. The IFRP establishes a minimum payment schedule of $25 per quarter for non-UNICOR or UNICOR Grade 5 inmates and 50 percent of monthly earnings for inmates assigned UNICOR Grades 1 through 4. See id. § 545.11(b)(1)–(2).

"The inmate is responsible for making satisfactory progress in meeting [their] financial responsibility plan and for providing documentation of these payments to unit staff." Id. § 545.11(b). The inmate may make "[p]ayments . . . from institution resources or non-institution (community) resources." See id.

BOP staff are responsible for monitoring the inmate's "[p]articipation and/or progress in the [IFRP]," and conducting a review "each time [they] assess [the] inmate's demonstrated level of responsible behavior." See id. § 545.11(c). During the IFRP program review, BOP staff must:

- determine the total funds deposited into the inmate's trust fund account for the previous six months;

- subtract the IFRP payments made by the inmate during the previous six months; and

---

[7] "UNICOR is the trade name of Federal Prison Industries, Inc., a self-sustaining government corporation that provides employment and job training to BOP inmates while producing marketable goods and services." United States v. Lemoine, 546 F.3d 1042, 1047 n.3 (9th Cir. 2008); see also United States v. Allen, 190 F.3d 1208, 1209 n.1 (11th Cir. 1999) ("UNICOR is a program through which inmates manufacture products pursuant to government contracts.").

- subtract $450 (i.e., $75 x 6 months, ITS exclusion).

Any money remaining after the above computation may be considered for IFRP payments, regardless of whether the money is in the inmate's trust fund or phone credit account. The Unit Team has the discretion to consider all monies above that computation to adjust the inmate's IFRP payment plan.

See PS 5380.08 at 8. The unit manager has the authority to determine whether an inmate's IFRP payments are commensurate with their ability to pay and makes this determination on a case-by-case basis after considering each inmate's unique circumstances. See id.

To encourage inmates to pay their court-ordered financial obligations while in BOP custody, the BOP affords certain privileges to inmates who are participating in the IFRP that are unavailable to inmates who refuse to participate. An inmate's refusal to participate in the IFRP or refusal to comply with the provisions of their financial plan "ordinarily shall result" in the following:

(1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;

(2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);

(3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

(4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;

(5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;

(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

. . .

[(10)] The inmate will not receive an incentive for participation in residential drug treatment programs.

See 28 C.F.R. § 545.11(d). Additionally, inmates who refuse to participate in IFRP will not earn First Step Act ("FSA") time credits ("FTCs"). See Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (Nov. 18, 2022) ("PS 5410.01"), at 11 ("If an inmate refuses to participate in required programs (e.g., [IFRP], Drug Education, etc.), the inmate will not earn FTCs. While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.");[8] see also Vargas v. Rivers, No. 24-10703, 2025 WL 1380067, at *1–2 (5th Cir. May 13, 2025) (unpublished) (explaining that the IFRP and FSA "intersect because the [BOP] has designated the IFRP as" a "productive activit[y]" for purposes of earning FSA FTCs and that "[u]nder BOP regulation, '[a]n inmate may lose earned FSA Time Credits for violation of the requirements or rules of' a productive activity program" (quoting 28 C.F.R. § 523.43(a) and citing PS 5410.01)).

### D.    Alexandre's IFRP and Related Administrative Proceedings

Alexandre asserts that for seven (7) months while in BOP custody, he was paying $25 per month under the IFRP until he signed a written Inmate Financial Plan on April 1, 2024, which

---

[8]  Respondent attaches a copy of BOP Program Statement 5410.01 as an exhibit to its response in opposition to Alexandre's habeas petition. See (Doc. No. 9-12).

required him to pay $880 per month starting in May 2024.[9]  (Doc. Nos. 1 at 6; 1-1 at 9, 9-6 at 2.)

By this time, the BOP's Financial Responsibility Plan Roster showed that Alexandre had an

account balance of $1338.50 and had deposits totaling $5,885 over the prior six (6) months.  See

(Doc. Nos. 9-2 ¶ 5; 9-5 at 1).  After deducting $450 ($75 per month for six (6) months) for

Alexandre's telephone allowance and $150 for his six (6) prior IFRP payments, he had $5,285

available for IFRP payments.  See (Doc. No. 9-5 at 1).[10]

On April 11, 2024, Alexandre submitted an Inmate Request to Staff directed to a case

manager.  (Doc. No. 1-1 at 7.)  Alexandre indicated that he had reviewed his trust fund account

---

[9] Alexandre does not deny signing the Inmate Financial Plan but claims that he signed it "under duress."  See (Doc. No. 1 at 6).  The Court notes that the Inmate Financial Plans states, inter alia, that:

> A STAFF MEMBER HAS PROVIDED ME WITH INFORMATION REGARDING THE POTENTIAL CONSEQUENCES OF A REFUSAL ON MY PART TO PARTICIPATE IN THE [IFRP].
>
> I AGREE TO SUBMIT PAYMENTS TOWARD SATISFACTION OF THE FINANCIAL OBLIGATION(S) INDICATED ON THIS FORM IN ACCORDANCE WITH THE PAYMENT PLAN OUTLINED BELOW.  I AGREE TO FOLLOW THIS PAYMENT PLAN UNTIL THE FINANCIAL OBLIGATION(S) IS SATISFIED.
>
> I FURTHER UNDERSTAND THAT THE PAYMENT PLAN WILL AUTOMATICALLY STOP AND NO FUNDS WILL BE WITHDRAWN FROM MY ACCOUNT IN THE EVENT THAT I AM PERMANENTLY RELEASED FROM MY PRESENT INSTITUTION OF CONFINEMENT.  IN THE EVENT THAT I AM RELEASED PURSUANT TO A WRIT (INCLUDING A REQUEST FOR TEMPORARY CUSTODY PURSUANT TO THE INTERSTATE AGREEMENT ON DETAINERS) THE PLAN WILL NOT TERMINATE UNLESS I NOTIFY UNIT STAFF THAT UPON COMPLETION OF ANY PAYROLL/DEDUCTION CYCLES IN PROGRESS AT THE TIME I LEAVE THE INSTITUTION I WISH THE PLAN TO TERMINATE.

See (Doc. Nos. 1-1 at 9; 9-6 at 2).

[10]  $880 per month for six months equals $5,280.

for the prior six (6) months, and he believed that there was "no justification for the 3,520%
increase to $880/month up from $25/month." See (id.).  He requested that the case manager
place a "hold on that decision until the court resolution and the appeal remedy process."  See
(id.).  He also claimed to "not have that kind of money and the little [e]xtra [he had] is for [his]
legal defense (mail, [r]esearch, stamps, print, etc.)."  See (id.).

On April 14, 2024, a staff member denied Alexandre's request.  See (id. at 6, 7).  The
response stated that Alexandre's "contract was established in accordance with [PS 5380.08]," and
that his "situation will be reviewed at [his] next scheduled Program Review."  See (id. at 7).

On May 30, 2024, Alexandre filed a formal Request for Administrative Remedy with
Respondent.[11]  (Doc. No. 1-1 at 4.)  In his Request, Alexandre asserted that his unit manager
unlawfully decided to raise his monthly IFRP payment from $25 per month to $880 per month
without waiting for the SDNY to address his motion to establish a fixed restitution payment.
(Id.)  Additionally, he claimed that the SDNY unlawfully delegated the responsibility for
establishing the amount of his monthly restitution payment to the BOP.  (Id.)  Alexandre
requested that the Warden reverse the decision of the unit manager and return any excess
payments withdrawn from his prison account.  (Id.)

---

[11]  The BOP has a multi-step Administrative Remedy Program which allows an inmate "to seek
formal review of an issue relating to any aspect of [their] confinement."  See 28 C.F.R. §
542.10(a).  First, an inmate should attempt informal resolution of the issue with the appropriate
staff member.  See id. § 542.13(b).  If informal resolution is unsuccessful, the inmate may submit
a formal Request for Administrative Remedy, using a BP-9 form, to the warden within twenty
(20) calendar days "following the date on which the basis for the Request occurred."  See id. §
542.14(a).  The warden must respond to the Request within twenty (20) calendar days.  See id. §
542.18.  An inmate dissatisfied with the warden's response may appeal, using a BP-10 form, "to
the appropriate Regional Director within 20 calendar days of the date the warden signed the
response."  See id. § 542.15(a).  Finally, an inmate may appeal from the Regional Director's
response, using a BP-11 form, to the BOP's General Counsel "within 30 calendar days of the
date the Regional Director signed the response."  See id.  The General Counsel's response to this
appeal is generally due within twenty (20) calendar days.  See id. § 542.18.

Respondent denied Alexandre's Request via a written decision dated June 18, 2024.  (Id.

at 5.)  In his written decision, Respondent set forth his reasons for denying the Request as

follows:

> According to [PS 5380.08], inmates are required to make payment toward their
> court - ordered financial obligations.  Failure to make commensurate payments in
> accordance with PS[]5380.08 can ultimately affect the Custody Classification
> Score in accordance with Program Statement 5100.08, Security Designation and
> Custody Classification Manual.  Payment contracts are established in accordance
> with PS[]5380.08 and are calculated based on the amount received into your
> account during the previous six-month period of time.  At the time of this review
> (February 2024), you had received $3550.00 into your account.  The amount
> available for consideration was $3000.00, based upon the amount excluded for
> communication purposes and taking into consideration prior IFRP payments.  From
> September 7, 2023, until June 11, 2024, you were maintained in IFRP Participates
> status; however, during this time frame only made payments totaling $534.30
> towards your obligations of a $100 felony assessment and restitution in the amount
> of $213,639,133.50.  As of June 13, 2024, you have received $6,235.00 in deposits
> into your inmate account.  Available funds for consideration are $5,325.70.  Based
> upon these numbers, the recommended contract of $880 per month is
> commensurate and in line with the Judgement [sic] and Commitment Order.

See (id.).

On July 3, 2024, Alexandre appealed from the Respondent's denial to the BOP Regional

Director, who denied the appeal on September 6, 2024.  See (id. at 2, 3).[12]  Alexandre then

appealed to the BOP's General Counsel on September 18, 2024.  See (Doc. No. 1-1 at 2).  He

described his reasons for the appeal as follows:

> I write to appeal the regional office denial of the BP-10 remedy escalation in regards
> of [sic] my IFRP arbitrary increase from $25/month to over $880/month through an
> improper delegation and abuse of discretion from the BOPs [sic] using the FBOPs
> [sic] policy PS 5380 [sic] affecting my FSA[] FTCs, and in fact keeping me longer
> in prison for failure to adhere to the brute force order to have my family find enough
> money to pay them or I will stay longer in prison and be deprived of food and basic
> necessities for the many years ahead without an end in sight.  I incorporate the
> claims submitted in the CopOut [sic], Bp-8 [sic], BP-9, BP-10 and the exhibits

---

[12]  Although Alexandre attaches a copy of his appeal to the Regional Director to his petition
(Doc. No. 1-1 at 3), he does not attach the Regional Director's response.  He does, however,
indicate that the Regional Director denied his appeal (Doc. Nos. 1 at 3; 1-1 at 2).

attached in this submission BP-11 before filing the habeas corpus under 28 USC [sic] § 2241 seeking a fair and just outcome. It is funny that the BOPs [sic] print on paper that this program is VOLUNTARY and encouraged but the abuse, threat and punishment for the arbitrary amount to the extent that the family cannot afford to pay it and continue to support the inamate [sic], the punishment is harsh and extremen [sic] putting inmate in prison for a longer time than sentenced because of the payment not made. My family is working two jobs to keep up with the disaster of incarceration and there is no way in the law that the BOPs [sic] as part of the DOJ can abuse my rights and theirs by imposing a sentence without taking into consideration their ability to pay and all the requirements a sentencing judge must adhere to when imposing a restitution payment amount. It's interesting that the policy is dubious and willfully vague stating voluntary but I am forced to sign the contrary and when I cannot pay, I am punished. I need your assistance to reverse that abuse and reserve my IFRP to $25/month an [sic] drestore [sic] all my FTCs lost and money taken unlawfully.

See (id.).

The BOP's Office of General Counsel denied Alexandre's appeal via a written decision dated November 8, 2024. See (id. at 1). The reasons for the denial were stated as follows:

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. [PS] 5380.08 establishes the procedure by which an inmate may make efforts toward meeting their criminal monetary penalties and legitimate financial obligations. Payment amounts are based on a formula contained within this Program Statement and considers all funds received from all sources. Courts have upheld the authority of the [BOP] to collect financial obligations through the IFRP and have held that the IFRP procedures are lawful and constitutional. The statutory authority of the IFRP is referenced in [PS] 5380.08.

Our review reveals that, during the time in question, you signed an Inmate Financial Plan agreeing to make payments toward you court ordered financial obligations. As you were advised, you missed multiple payments and because of this, you were placed in FRP refusal status on June 11, 2024. Inmate participation in the IFRP is completely voluntary, but failure or refusal to make satisfactory progress toward meeting financial obligations may result in the limitation of certain privileges reflective of a demonstration of poor responsibility. We find staff acted in accordance with policy with regard to this issue. We encourage you to work with your Unit Team to satisfy to your financial obligations to the Court.

See (id.).

According to the BOP's January 22, 2025 Program Review, Alexandre was still on refusal status and had not made any IFRP payments since June 11, 2024.  See (Doc. No. 9-7 at 3).  Additionally, Alexandre had trust fund deposits of $4,300 over the prior six (6) months but had an account balance of only $34.10.  See (id. at 4).  After the requisite $450 deduction for telephone costs, the BOP calculated that he had $3,850 available for IFRP payments over the prior six (6) months and could have paid $640 per month or $1,920 per quarter.  See (id.).[13]

## II.    LEGAL STANDARD

### A.    Section 2241 Habeas Petitions

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence."  See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas").  While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out."  See Woodall, 432 F.3d at 242, 243 (citation omitted).  Thus, Section 2241 allows a petitioner to challenge "the 'manner, location, or conditions of a sentence's execution.'"  See id. at 242 (quoting Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)).

### B.    The FSA

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted.  See 18 U.S.C. § 3632(a).  The

---

[13] Respondent asserts that Alexandre "refused the opportunity to make IFRP payments in the amount of $640 per month or $1,920 per quarter."  See (Doc. No. 9 at 9).

14

System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release.  See id.  Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs."  See Kurti v. White, No. 19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FTCs to be applied toward time in pre-release custody or supervised release.  See 18 U.S.C. § 3632(d)(4)(A).  An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation.  See id.  Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation.  See id.

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FTCs.  See id. § 3632(d)(4)(D)–(E).  In addition, an inmate cannot earn FTCs for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)."  See id. § 3632(d)(4)(B).  Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting

transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." See id. § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." See 28 C.F.R. § 523.42(a). An inmate must also be "successfully participating" in designated programming to earn FSA credits. See 28 C.F.R. § 523.41(c)(1). "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." See id. § 523.41(c)(2).

## III.    DISCUSSION

### A.    Alexandre's Motion for Summary Judgment

Alexandre filed a motion for summary judgment in which he asserts that he is entitled to judgment in his favor on his habeas petition. (Doc. Nos. 12, 13.) Even if a motion for summary judgment is a proper filing in a habeas case, Alexandre's motion is unnecessary here because his petition is fully briefed and ready for resolution.[14] Accordingly, the Court will deny this motion.

---

[14] This Court will apply the Rules Governing Section 2254 Habeas Cases in the United States District Courts to Alexandre's Section 2241 habeas petition. See (Doc. No. 5 ¶ 2 ("The Court exercises discretion under Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, to apply those Rules to the petition.")); see also R. 1(b), 28 U.S.C. foll. § 2254 ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)," which address "[c]ases [i]nvolving a [p]etition under 28 U.S.C. § 2254" (emphasis omitted)); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus . . . to the extent to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions" (emphasis omitted)). These Rules allow district courts

### B.    Alexandre's Section 2241 Habeas Petition

#### 1.    The Parties' Arguments

##### a.    Alexandre's Claims in His Habeas Petition

Alexandre's habeas petition contains four (4) grounds for relief.  (Doc. No. 1 at 6–7.)

First, he argues that the BOP lacks authority to set a restitution payment amount for inmates

"under the disguise [sic] of" the IFRP.  See (id. at 6)  Second, he asserts that "if the IFRP is truly

---

to apply the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with any statutory provisions or" the Rules themselves.  See R. 12, 28 U.S.C. foll. § 2254.

Although it appears that the Third Circuit Court of Appeals has yet to address this issue, at least three (3) other circuit courts of appeal have concluded that Federal Rule of Civil Procedure 56, which governs motions for summary judgment, applies to habeas cases.  See Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011) ("Federal Rule of Civil Procedure 56 'applies to habeas proceedings.'" (quoting Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991))); Clark v. Johnson, 202 F.3d 760, 764–65 (5th Cir. 2000) ("As a general principle, Rule 56 . . . applies with equal force in the context of habeas corpus cases." (citations omitted)); McBride v. Sharpe, 25 F.3d 962, 969 (11th Cir. 1994) ("As a general principle, Rule 56 . . . is applicable in habeas corpus cases." (citations omitted)).  On the other hand, one (1) circuit court of appeals has concluded that summary judgment principles do not apply when a federal district court is ruling on the merits of a federal habeas claim.  See Black v. Carpenter, 866 F.3d 734, 742–43 (6th Cir. 2017) (concluding that "[s]ummary-judgment procedures simply do not apply to a federal habeas court's final adjudication of a [habeas] claim" because [the petitioner has] the burden of proving, by a preponderance of the evidence, that [they are] entitled to relief" (citations omitted)).  Judges in this District have reached conflicting decisions on the applicability of Rule 56 to habeas proceedings.  Compare Stinson v. Wakefield, No. 07-cv-01237, 2010 WL 1462536, at *1 (M.D. Pa. Apr. 9, 2010) ("Summary judgment is appropriate in a habeas proceeding . . . ."), with Meade v. Spaulding, No. 16-cv-02212, 2017 WL 3425181, at *2 (M.D. Pa. Aug. 9, 2017) (denying motion for summary judgment as unnecessary in Section 2241 habeas action).

This Court is persuaded by the reasoning of those cases that have determined that summary judgment motions are "superfluous and unnecessary in determining the merits of a habeas corpus petition."  See Levack v. Burton, No. 16-cv-00125, 2018 WL 11648114, at *2 (W.D. Mich. Feb. 2, 2018); see also Scott v. FCI Fairton, No. 09-cv-00929, 2010 WL 2540456 at *3 (D.N.J. June 16, 2010) ("In a habeas proceeding, the petitioner does not proceed to trial.  Therefore, Petitioner's motion for summary judgment is improper.  For all practical purposes, summary judgment is equivalent to the Court's [sic] making a determination on the merits of a habeas petition.  As the Court will rule on the petition for writ of habeas corpus in due course, a motion for summary judgment in a habeas proceeding serves no purpose."), aff'd, 407 F. App'x 612 (3d Cir. 2011) (unpublished).

'voluntary' as clearly stated in BOP policies and cited by BOP's answers, may the BOP force inmates to sign the [IFRP] contract and severely punish them when their family cannot afford the arbitrary amount unilaterally imposed by a unit manager." See (id.).  Third, he challenges the BOP's authority to place him in refusal status even though he alleges that he was willing to pay $25 more than the minimum payment of "$25 per quarter describe[d] in . . . PS 5380.08." See (id.).  Fourth, and finally, he asserts that the SDNY should not have delegated establishing a payment schedule to the BOP because the court must "take a lot of details in consideration in setting the IFRP payment amount," whereas the BOP "does not have to do any of that, [thus] placing the burden on the family" and resulting in the extension of his incarceration time.  See (id. at 7).

### b.    Respondent's Response in Opposition to the Petition

In opposing Alexandre's habeas petition, Respondent first addresses Alexandre's contention that the SDNY unlawfully delegated authority to the BOP to establish a payment schedule and exceeded its authority (to the extent it has such authority) in increasing his monthly payment.  Respondent argues that even though the SDNY did not establish a monthly amount for Alexandre's restitution payments during his federal incarceration, it "properly ordered" that he remit payments in installments, "leaving the monthly amount to the BOP's calculation." See (Doc. No. 9 at 13).

Additionally, Respondent asserts that although Alexandre "arguably set forth a viable federal habeas corpus claim [regarding] his contention that the BOP was precluded from implementing the IFRP to collect restitution in this case," the BOP did not "exceed[] its authority in setting the terms of [Alexandre's] restitution through the IFRP" because it "followed what was ordered by the [SDNY], as shown in the sentencing transcript." See (id. at 16–17).  Respondent

18

points out that the BOP's IFRP did "exactly what the program is designed to do—monitor payments and an inmate's fluctuating financial resources and ability to pay." See (id. at 21). Overall, Respondent contends that "the BOP did not exceed its authority nor was it impermissibly delegated authority, when it set and increased [Alexandre's] monthly restitution payment amounts." See (id. at 22).

As to the IFRP payment calculation, Respondent argues that Alexandre has failed to show a cognizable Section 2241 habeas claim because he has not demonstrated that the BOP's actions are inconsistent with the SDNY's judgment. (Id. at 23–24.) Regarding Alexandre's FSA FTCs, Respondent points out that inmates who refuse to participate in the IFRP, through declining to sign a payment plan or failing to remit the required payments, are ineligible to earn FTCs during the refusal period. (Id. at 24–25.) Thus, while Alexandre remains on refusal or "opt out" status, the BOP cannot apply any earned FTCs towards his early release. (Id. at 26 (citing PS 5401.10 § 10(d))). Therefore, Respondent contends that Alexandre's argument about the BOP unlawfully precluding him from earning FTCs or applying earned FTCs is without merit. (Id.)

### c.    Alexandre's Reply

Alexandre asserts that the BOP's increase in his IFRP monthly payment "threatens his capacity to purchase $90 weekly ($390 monthly) for basic necessities and jeopardizes his statutory prelease transfer credits under the [FSA]." See (Doc. No. 10 at 1). He claims that his unit manager increased his IFRP monthly payment to $880 per month despite lacking court authority to do so (since only the court can establish restitution amounts and payment schedules under 18 U.S.C. §§ 3572, 3663, 3664), and the increase "threaten[s] the loss of FTCs if [his] family is unable to meet [this] unjust demand." See (id. at 1–2). Alexandre also argues that: (1) the "arbitrary increase" in his monthly payment violates his rights under the Sixth Amendment to

the United States Constitution because it "restrict[s] access to legal resources, such as stamps for legal correspondence, payment for legal research, and the ability to file motions or serve documents to interested parties, <u>see</u> (<u>id.</u> at 2); (2) the BOP is not entitled to deference in its interpretation of any statutes pursuant to <u>Loper Bright Enterprises v. Raimondo</u>, 603 U.S. 369 (2024), <u>see</u> (<u>id.</u>);[15] (3) the BOP's action in penalizing him by "altering [his] release date due to [his] family's inability to meet the inflated restitution payment . . . effectively lengthens [his] incarceration" in violation of the Thirteenth Amendment, <u>see</u> (<u>id.</u> at 3, 4); (4) the BOP's conduct violates the Ex Post Facto Clause in Article I, Section 9 of the United States Constitution because it is denying him his earned FSA FTCs, <u>see</u> (<u>id.</u> at 5).

### 2.    Analysis

#### a.    New Claims Raised in Alexandre's Reply Brief

Alexandre raises Sixth Amendment, Ex Post Facto Clause, Thirteenth Amendment, and <u>Loper Bright Enterprises</u> claims in his reply brief.  <u>See</u> (Doc. No. 10 at 2–5).  The Court will not address these arguments because Alexandre raises them for the first time in his reply brief.  <u>See</u> <u>Cherry v. City of Phila.</u>, 216 F. App'x 205, 209 (3d Cir. 2007) (unpublished) ("[A]rguments raised for the first time in a reply brief are forfeited." (citing <u>United States v. Pelullo</u>, 399 F.3d 197, 222 (3d Cir. 2005), <u>cert denied</u>, 546 U.S. 1137 (2006))); <u>United States v. Medeiros</u>, 710 F. Supp. 106, 109 (M.D. Pa.) ("[I]t is improper for a party to present a new argument in [a] reply brief."), <u>aff'd</u>, 884 F.2d 75 (3d Cir. 1989).

---

[15]  In <u>Loper Bright Enterprises</u>, the Supreme Court overruled the deference principles adopted in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 US. 837 (1984).

### b.    Claims in Alexandre's Petition

After reviewing the parties' arguments, the Court concludes that Alexandre's claims are either not cognizable through his Section 2241 petition, i.e., the Court lacks jurisdiction to consider them, or are meritless.[16]  As for jurisdiction, the Court recognizes that the Third Circuit Court of Appeals has held that a Section 2241 habeas petitioner's "IFRP payment schedule and the sanctions imposed for noncompliance are part of the execution of [their] sentence"; therefore, a petitioner's "claim that they are illegal and invalid falls under the rubric of a § 2241 habeas petition."  See McGee v. Martinez, 627 F.3d 933, 937 (3d Cir. 2010); see also Rodriguez v. Warden Lewisburg USP, 644 F. App'x 199, 201 (3d Cir. 2016) (unpublished) ("A challenge to the BOP's IFRP collection mechanism is a challenge to the execution of a sentence properly pursued in a petition under § 2241." (citing McGee, 627 F.3d at 936–37)).  When viewed in a vacuum, the Third Circuit's language above appears to provide this Court with jurisdiction to consider Alexandre's Section 2241 petition insofar as he challenges the BOP's decision and

---

[16]  Although Respondent does not characterize its argument that Alexandre fails to state a meritorious claim relating to the BOP's IFRP calculation as a jurisdictional argument because he does not show that the calculation was inconsistent with the SDNY's judgment, see (Doc. No. 9 at 23–24), it is a jurisdictional argument.  Even if it was not such an argument, this Court has the authority and the obligation to examine subject-matter jurisdiction sua sponte.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583–84 (1999) (explaining that courts have independent obligation to determine whether subject-matter jurisdiction exists, even in absence of challenge from any party); Grp. Against Smog & Pollution, Inc. v. Shenango, Inc., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"); Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76–77 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt.  A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." (internal citation omitted)).  Moreover, the Court "can dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding."  See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

authority to increase his monthly IFRP restitution payment, its placement of him in refusal status for not paying towards the increased monthly amount, and the impact that his refusal status has on his FSA FTCs.  However, two (2) years after McGee, the Third Circuit explained an important aspect of McGee, one which necessitates the Court's conclusion that jurisdiction is lacking over all, or at least some, of Alexandre's Section 2241 claims.

In Cardona v. Bledsoe, the Third Circuit pointed out that McGee (as well as another precedential decision addressing the meaning of the "execution of" a sentence, Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005)), involved challenges to "BOP conduct that conflicted with express statements in the applicable sentencing judgment."  See 681 F.3d at 536.[17]  In other words, the petitioner in McGee asserted that "the BOP was not property putting into effect or carrying out the directives of the sentencing judgment."  See id. (cleaned up). Because the petition "concerned the execution of [the petitioner's] sentence," Section 2241 "authorized [the] federal district court to exercise jurisdiction over [the] petition[]."  See id. at 537.  Importantly, the Third Circuit explained that "to challenge the execution of [their] sentence under § 2241, [a petitioner] would need to allege that [the] BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment."  See id.

---

[17]  In McGee, the sentencing court imposed a term of imprisonment and assessed a $10,000 fine. See 627 F.3d at 934.  The sentencing judgment stated that while incarcerated, the petitioner was to pay the fine from his prison earnings "at a rate of $20.00 per month."  See id.  Despite the sentencing court specifying the petitioner's rate of repayment in the sentencing judgement, the BOP placed the petitioner on an IFRP plan requiring him to pay $25 per month.  See id. at 934–35.  The petitioner then challenged the BOP's action through a Section 2241 habeas petition.  See id. at 935.  The district court dismissed the petition for lack of jurisdiction; however, the Third Circuit vacated the dismissal on the appeal and remanded the case to the district court to be addressed on the merits.  See id. at 937.  On remand, the district court granted habeas relief.  See McGee v. Martinez, No. 08-cv-01663, 2011 WL 5599338, at *4 (M.D. Pa. Nov. 17, 2011) (concluding that the BOP violated the terms of the petitioner's sentencing judgment and ordering "the BOP to recalculate [the petitioner's] IFRP payment contract in complete accordance with the directives of the sentencing court"), aff'd, 490 F. App'x 505 (3d Cir. 2012).

Following <u>Cardona</u>, the Third Circuit has reiterated that claims regarding the legality of

the BOP's IFRP payment schedule are cognizable under Section 2241 as challenges to the BOP's

execution of a sentence if the payment schedule is inconsistent with the terms imposed by the

sentencing court's judgment.  <u>See, e.g.</u>, <u>Solomon v. United States</u>, 680 F. App'x 123, 125 (3d Cir.

2017) (unpublished) (determining that petitioner's claim that the BOP's IFRP payment schedule

(of $25 per month) "are illegal and that they conflict with the terms imposed by the sentencing

court's order" is a "challenge to the BOP's execution of his sentence [and] was properly brought

pursuant to § 2241" (citing <u>McGee</u>, 627 F.3d at 937)); <u>Rodriguez</u>, 644 F. App'x at 200

(explaining that "[a] challenge to the BOP's IFRP collection mechanism is a challenge to the

execution of a sentence properly pursued in a petition under § 2241" where the petitioner

claimed that the BOP "calculat[ed] the payment due toward his [$5,000] fine under [the IFRP] in

a manner that is inconsistent with the sentencing court's judgment" (footnote omitted) (citing

<u>McGee</u>, 627 F.3d at 936–37)).  Here, Alexandre is not claiming that the BOP failed to properly

"put into effect" or "carry out" the directive of the SDNY's judgment.  <u>See</u> <u>Woodell</u>, 432 F.3d at

243.  Nor could he.[18]  Instead, he challenges the validity of the SDNY's judgment, particularly as

---

[18]  As indicated above, the SDNY's written judgment did not contain any information regarding
his payment of almost $215 in restitution.  Nevertheless, the SDNY's oral sentence was specific
about Alexandre paying restitution by installments while incarcerated, and this Court may
consider it in determining the SDNY's intent.  As the Third Circuit has explained:

> "In interpreting a sentencing court's statements, we inspect the sentencing
> transcript as well as the judgment the sentencing court entered.  When a sentencing
> court's oral sentence and its written sentence are in conflict, the oral sentence
> prevails."  <u>Ruggiano v. Reish</u>, 307 F.3d 121, 133 (3d Cir. 2002) (citations,
> alterations, and quotation marks omitted).  "When an orally pronounced sentence
> is ambiguous, however, the judgment and commitment order is evidence which
> may be used to determine the intended sentence."  <u>United States v. Villano</u>, 816
> F.2d 1448, 1451 (10th Cir. 1987); <u>accord</u> <u>Ruggiano</u>, 307 F.3d at 133 (looking to the
> written judgment to clarify the oral sentence).  Moreover, "if the judgment fails to
> express the rulings in the case with clarity or accuracy, reference may be had to the

to the restitution part of the judgment.  See (Doc. No. 1 at 6–7 (identifying claims)).[19]  Such

challenges are not of the kind that this Court has jurisdiction to consider under Section 2241.

See, e.g., Thomas v. Baltazar, No. 17-cv-00121, 2017 WL 2957880, at *2–3 (M.D. Pa. July 11,

2017) (dismissing Section 2241 habeas petition for lack of jurisdiction where the petitioner

argued that the sentencing court "impermissibly delegated to the BOP its duty under the

[MVRA] to set the manner and schedule of restitution during imprisonment, and that the BOP

---

findings and the entire record for the purpose of determining what was decided."
Richman Bros. Recs. v. U.S. Sprint Commc'ns Co., 953 F.2d 1431, 1439 (3d Cir.
1991) (quotation marks omitted).  This approach ensures that a judgment is
construed "to give effect to the intention of the court."  Id. (quotation marks
omitted).

See United States v. Shvets, 154 F.4th 74, 89 (3d Cir. 2025).  After reviewing the SDNY's oral
judgment, see Alexandre, ECF No. 107 at 110–13, the BOP's imposition of Alexandre's IFRP
payment plan is consistent with that judgment.

[19]  Under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A–3664 (MVRA),
the sentencing court must specify "the manner in which, and the schedule according to which,
the restitution is to be paid[.]"  See 18 U.S.C. § 3664(f)(2).  To establish this schedule, the
sentencing court must consider the defendant's "financial resources and other assets," "projected
earnings and other income," and "any financial obligations . . . including obligations to
defendants."  See id.

The sentencing court can order the defendant to provide "a single, lump-sum payment, partial
payments at specified intervals, in-kind payments, or a combination of payments at specified
intervals and in-kind payments."  See id. § 3664(f)(3)(A).  The restitution schedule must be set
by the sentencing court and is nondelegable.  See id. § 3572(d)(2) ("If the . . . restitution order . .
. permits other than immediate payment, the length of time over which scheduled payments will
be made shall be set by the court, but shall be the shortest time in which full payment can
reasonably be made."); United States v. Corley, 500 F.3d 210, 225 (3d Cir. 2007) (concluding on
direct appeal from sentencing judgment that the sentencing court, even though it "discharged its
responsibility to fix the amount of restitution and the schedule of payments once [the defendant]
is released," impermissibly delegated its responsibly under the MVRA to set the manner and
schedule of the defendant's restitution payments during their incarceration when its restitution
order "delegate[d] to the [BOP] the task of determining how [the defendant] will pay his
obligations while he is in prison"), vacated and remanded on other grounds, 556 U.S. 303 (2009).
This Court expresses no position on whether the SDNY unlawfully delegated its authority under
the MVRA to set the manner and schedule of Alexandre's restitution payments to the BOP.

exceeded its authority in collecting restitution payments," because this claim essentially "challenge[d] the sentencing court's restitution order itself; not the BOP's execution of it"). Alexandre should have asserted the challenge on direct appeal, see Balter v. Martinez, 477 F. App'x 873, 875 (3d Cir. 2012) (unpublished) ("[T]he proper time for challenging a restitution order is on direct appeal . . . ."); Ruffin v. Christensen, No. 23-cv-01297, 2024 WL 3850451, at *3 (M.D. Pa. Aug. 15, 2024) (explaining that when a Section 2241 habeas petitioner "seeks to challenge the validity of the restitution order itself, 'such a challenge should [be made] upon direct appeal'" (quoting Duronio v. Werlinger, 454 F. App'x 71, 73 n.3 (3d Cir. 2011) (unpublished))), or as part of a Section 2255 motion.  See Matheny v. Morrison, 307 F.3d 709, 711–12 (8th Cir. 2002) (concluding that the petitioner improperly filed a Section 2241 habeas petition, instead of a Section 2255 motion in the sentencing court's district, to the extent that the petitioner argued that the sentencing court impermissibly "delegated its sentencing power to the BOP" because such a claim "attacked the validity of the sentence").[20]

Additionally, Alexandre's complaints about the BOP placing him in refusal status and the imposition of corresponding consequences do not relate to the execution of his sentence and, therefore, this Court lacks jurisdiction to consider them.  "[T]he IFRP has been upheld as constitutional and as fulfilling legitimate penological interests."  Thomas v. Ramirez, No. 18-22064, 2018 WL 3015014, at *5 (S.D. Fla. May 30, 2018) (citing McGhee v. Clark, 166 F.3d 884, 886–87 (7th Cir. 1998)), report and recommendation adopted, 2018 WL 3014085 (S.D. Fla. June 15, 2018).  "The consequences of choosing not to participate in the IFRP do not amount to constitutional violations."  Jordan v. Holt, 488 F. App'x 587, 588 (3d Cir. 2012) (unpublished)

---

[20]  As noted above, Alexandre has a pending amended Section 2255 motion in the SDNY in which he, inter alia, challenges his trial counsel's effectiveness in not contesting or appealing from the SDNY's restitution order.

(citing Lemoine, 546 F.3d at 1049); see also Balter, 477 F. App'x at 875 ("Balter 'ha[s] no

entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP

would provide, such as work detail outside the prison perimeter, a higher commissary spending

limit, a release gratuity, or pay beyond the maintenance pay level.'" (quoting Lemoine, 546 F.3d

at 1049)); Duronio v. Gonzales, 293 F. App'x 155, 157 (3d Cir. 2008) (unpublished) ("While

being in the 'IFRP Refuse' category denies a prisoner certain privileges, it does not result in the

imposition of discipline that would trigger a constitutionally protected interest.").  Similarly, his

inability to earn additional FSA FTCs does not rise to the level of a constitutional violation.  See,

e.g., Sedlacek v. Rardin, No. 24-1254, 2025 WL 948485, at *1 (6th Cir. Jan. 21, 2025)

(unpublished) ("Courts have routinely held that a federal prisoner does not have a liberty interest

in receiving credits under the FSA." (citations omitted)); Vargas, 2025 WL 1380067, at *1–2

(explaining that federal prisoners have "no fundamental liberty interest in either participation in

the IFRP or the incentives associated with that voluntary participation, including the ability to

earn FSA time credits"); Garcia v. Ortiz, No. 20-cv-01728, 2023 WL 1794752, at *2 (D.N.J. Feb.

7, 2023) ("Petitioner does not have a liberty interest [for due process purposes] in FSA Time

Credits he might have earned from his UNICOR JOB, but for his finding of guilt of a prison

code violation." (citation omitted)); Gant v. King, No. 23-cv-01766, 2023 WL 6910771, at *3 (D.

Minn. Oct. 19, 2023) ("Given the contingent nature of the application of FSA time credits to

prerelease custody, they cannot reasonably be regarded as an entitlement.").[21]  Therefore,

---

[21]  Judges in this District have concluded that district courts lack jurisdiction to consider
challenges to BOP decisions regarding prerelease custody under the FSA because they do not
constitute claims relating to the execution of a petitioner's sentence.  See, e.g., Diarra v. Greene,
No. 25-cv-00964, 2025 WL 2997031, at *4–5 (M.D. Pa. Oct. 24, 2025) ("Under [Cardona],
execution-of-sentence habeas claims in the Third Circuit are tightly circumscribed[, and]
challenge[s to] the BOP's failure to timely transfer him to prerelease custody based on the
[FSA]—but do not allege that the BOP's conduct is somehow inconsistent with a command or

Alexandre fails to state a cognizable Section 2241 habeas claim and, as such, this Court lacks jurisdiction to address the merits his petition.

Even if the Court had jurisdiction to consider the merits of Alexandre's petition, it would fail in two (2) respects. First, the Third Circuit has repeatedly emphasized that "participation in the IFRP is voluntary. The BOP only 'implements' the IFRP after a prisoner has chosen to participate in it." See Jordan, 488 F. App'x at 588. Thus, Alexandre, who agreed to a $25 monthly payment and then agreed again to an $880 per month payment, "cannot be heard to complain about the unlawful action of scheduling his restitution payments after he elected participation in the IFRP." See id. (cleaned up) (citation omitted). Second, although Alexandre mentions in a conclusory fashion that he was essentially coerced into signing the IFRP payment increasing his payments to $880 per month, see (Doc. No. 1 at 6); see also (Doc. No. 1-1 at 2 (alleging as part of his administrative appeal to the BOP's Office of General Counsel that he was "forced to sign the contract"), he identifies no facts in support of this conclusory claim. Moreover, the fact that he was "faced with the choice of either meeting his financial responsibilities or losing privileges associated with participation in the IFRP" does not permit Alexandre to assert that he signed his payment plan under duress. See Griggs v. Zickenfoose, No. 13-cv-02342, 2014 WL 2042153, at *2 (M.D. Pa. May 19, 2014). Instead, "by voluntarily entering into the BOP's financial program, [Alexandre] personally provided the BOP the authority to collect restitution funds." See Ruffin, 2024 WL 3850451, at *4.

---

recommendation in [their] sentencing judgment—fail to meet the stringent jurisdictional requirements set forth in Cardona.").

**IV.    CONCLUSION**

For the reasons set forth above, the Court will dismiss Alexandre's Section 2241 habeas petition.  An appropriate Order follows.

s/ Yvette Kane

Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
